UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

S‍TEWART J‍ENSEN,

    Plaintiff,

v.

D‍ELTA A‍IR L‍INES, I‍NC.,

    Defendant.

_____/

Case No. 17-cv-13487

U‍NITED S‍TATES D‍ISTRICT C‍OURT
J‍UDGE
G‍ERSHWIN A. D‍RAIN

## **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [#5]**

### **I. I‍NTRODUCTION**

Presently before the Court is Defendant Delta Airlines, Inc.'s ("Delta") Motion to Dismiss. Plaintiff brought a breach of contract claim and a claim under the Michigan Persons with Disabilities Civil Rights Act after Defendant required Plaintiff to retire due to alcoholism. Defendant asserts that this Court does not have subject matter jurisdiction over Plaintiff's claims because the Railway Labor Act ("RLA") preempts his claims. Additionally, Defendant asserts that Plaintiff fails to plead sufficient facts to support his claims. For the reasons discussed below, this Court will grant Defendant's Motion.

-1-

## II. FACTUAL BACKGROUND

Plaintiff, Stewart Jensen, is a former airline pilot. On June 3, 1985, Republic Airlines hired Plaintiff as an airline pilot. Dkt. No. 1, pg. 2 (Pg. ID 2). In 1986, Northwest Airlines acquired Republic, and Northwest retained Plaintiff as a pilot. *Id.* at pg. 3 (Pg. ID 3). In 1989, Plaintiff was diagnosed as being chemically dependent on alcohol. *Id.* Plaintiff then agreed to participate in the Northwest Airlines Pilot Assistance Program (NAPAP) as a part of his recovery. *Id.* In May 2002, Plaintiff relapsed. *Id.* As a result of the relapse, Plaintiff entered into an agreement with Northwest Airlines in August 2002 to submit to unannounced tests to detect the consumption of alcohol and illicit drugs in his system. *Id.*

In 2008, Northwest merged with Delta-Defendant. *Id.* Thereafter, Plaintiff became a pilot for Defendant. *Id.* As a Delta employee, Plaintiff was represented by a union called the Air Line Pilots Association ("ALPA"). Dkt. No. 5, pg. 10 (Pg. ID 38). After the merger, Plaintiff's agreement with Northwest was superseded by two contracts with Delta. Dkt. No. 1, pg. 3 (Pg. ID 3). The first contract ("Contract A") conditioned Plaintiff's continued employment with Delta on his agreement to submit to blood alcohol tests or drug screens at any time. *Id.* at pg. 4 (Pg. ID 4). The second contract ("Contract B"), a Last Chance Agreement ("LCA"), incorporated Contract A into it. *Id.* Contract B stated that any failure by Plaintiff to comply with the contracts would constitute just cause for his discharge.

*Id.* at pg. 18 (Pg. ID 18). Plaintiff signed these contracts on or about July 28, 2010. On or about October 10, 2014, Delta subjected Plaintiff to a phosphatidylethanol (PEth) test, which detected alcohol in Plaintiff's system. *Id.* at pg. 5 (Pg. ID 5). On November 13, 2014, Defendant's Managing Director then required Plaintiff to choose between retirement and termination. *Id.* at pg. 8 (Pg. ID 8). Plaintiff requested an extension to make his decision; however, the Managing Director denied this request and commanded Plaintiff to submit retirement paperwork. *Id.* at pg. 9 (Pg. ID 9). Plaintiff's resignation became effective on November 17, 2014. *Id.*

On October 17, 2017, Plaintiff filed a complaint against Defendant. Dkt. No. 1. In the complaint, Plaintiff alleges two counts: breach of contract and a violation of the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"). *Id.* at pg. 4, 10 (Pg. ID 4, 10). On January 12, 2018, Defendant filed its Motion to Dismiss. Dkt. No. 5. Plaintiff filed a response on January 30, 2018 opposing the Motion. Dkt. No. 8. Defendant filed its reply on February 12, 2018. Dkt. No. 9.

### III. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) governs motions to dismiss. The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a

complaint must "allege enough facts to make it plausible that the defendant bears legal liability." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016). The facts need to make it more than "merely possible that the defendant is liable; they must make it plausible." *Id.* "Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim." *Id.* A claim will be dismissed "if the facts as alleged are insufficient to make a valid claim or if the claim shows on its face that relief is barred by an affirmative defense." *Riverview Health Inst., LLC v. Med. Mut. Of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

## IV. DISCUSSION

### A. Breach of Contract

Count I of Plaintiff's complaint alleges breach of contract. Dkt. No. 1, pg. 4 (Pg. ID 4). Plaintiff asserts that the PEth test Defendant used to test the presence of alcohol detected alcohol that was in Plaintiff's system due to working on a construction job with denatured alcohol. *Id.* at pg. 6–7 (Pg. ID 6–7). Therefore, Defendant fired Plaintiff without just cause. *See id.* Further, Plaintiff also asserts that Defendant tested him for alcohol after the sixty-month period from his original return to duty in April 2003, in violation of Contract B. Dkt. No. 1, pg. 8 (Pg. ID 8).

## 1) Preemption

Defendant argues that the RLA preempts Plaintiff's breach of contract claim. Dkt. No. 5, pg. 21 (Pg. ID 49). Plaintiff argues that his claim is not preempted. Dkt. No. 8, pg. 13 (Pg. ID 223).

The RLA requires an airline and the union representing airline employees to establish a system to settle grievances between union-represented employees and the airline pursuant to a collective bargaining agreement. *See* 45 U.S.C. § 184. Under the RLA, the National Railroad Adjustment Board has exclusive power to settle disputes over the meaning of an existing collective bargaining agreement. *See Stephens v. Ret. Income Plan for Pilots of U.S. Air, Inc.*, 464 F.3d 606, 610 (6th Cir. 2006). Therefore, federal district courts cannot have subject matter jurisdiction over such disputes. This Court has previously held that Last Chance Agreements are equivalent to collective bargaining agreements for purposes of preemption. *See Winters v. Ford Motor Co.*, No. 06-CV-10263, 2006 WL 3694611, at *4 (E.D. Mich. Dec. 12, 2006); *Cotter v. DaimlerChrysler Corp.*, 87 F. Supp. 2d 746, 757 (E.D. Mich. 2000) (holding that a conditional reinstatement must be treated the same as a collective bargaining agreement for preemption

purposes).[1] Therefore, the RLA also preempts disputes about a last chance agreement.

Plaintiff asserts that ALPA was not a party to his Last Chance Agreement. Dkt. No. 8, pg. 16 (Pg. ID 226). Therefore, the LCA is not equivalent to a collective bargaining agreement and there is no preemption. *See id.* However, Contract A states that the agreement is offered by the FAA, Delta, and ALPA. Dkt. No. 1, pg. 15 (Pg. ID 15). Paragraph two of Contract B, the Last Chance Agreement, incorporates Contract A into it. *Id.* at pg. 18 (Pg. ID 18). Therefore, ALPA is a party to Plaintiff's LCA. Thus RLA preemption can apply to Plaintiff's LCA.

The next issue for this Court to consider is whether Plaintiff's allegations concern disputes over the meaning of the LCA. First, Plaintiff claims that Defendant fired him in violation of the LCA because the PEth test detected the wrong kind of alcohol in his system. This claim concerns a dispute about the meaning of the LCA. It requires the Court to consider the LCA's terms to decide if Defendant violated them. Plaintiff's second claim that Defendant wrongfully tested him for alcohol outside of the sixty-month window also involves a dispute over the

---

[1] These cases apply the Labor Management Relations Act preemption standard. However, the Supreme Court has applied LMRA preemption law to RLA preemption analysis because their preemption standards are virtually identical. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260–61 (1994).

meaning of the LCA. To settle this dispute, the Court would need to read the LCA and interpret what the agreement says about the timeframe in which alcohol testing is allowed. Therefore, the RLA preempts Plaintiff's Count I claims.

In conclusion, this Court holds that the RLA preempts Plaintiff's Count I claims such that this Court does not have subject matter jurisdiction over them.

### 2) Failure to State a Claim

Even if Plaintiff's claims did not require an interpretation of the LCA, his claims still fail for failure to state a claim upon which relief can be granted.

Plaintiff asserts that Defendant wrongfully fired him and tested him for alcohol in violation of Contract B. Plaintiff alleges that he tested positive under the PEth test because he worked on the renovation of two homes in which he worked with denatured alcohol. Dkt. No. 1, pg. 6–7 (Pg. ID 6–7). Plaintiff claims that a positive PEth test is consistent with low level exposure to denatured alcohol over a period of time. *Id.* at pg. 7 (Pg. ID 7). Further, Plaintiff's complaint alleges that Plaintiff had negative alcohol results of six separate tests taken within 26 days of the positive PEth test. Dkt. No. 1, pg. 7 (Pg. ID 7). Plaintiff uses all of these allegations to assert that he was not under the influence of alcohol when he was tested; therefore, Defendant wrongfully fired him in breach of contract.

Plaintiff's claims fail to raise sufficient facts to preclude dismissal. Plaintiff submitted a report discussing alcohol biomarker tests, including the PEth test. This report stated that the PEth test has a high sensitivity[2] and is not likely to produce false positives. Dkt. No. 8-3, pg. 3 (Pg. ID 250). The report stipulated that further research is needed on the sources of false positives for the newer biomarkers, namely for the EtG and EtS biomarkers. *Id.* at pg. 4–5 (Pg. ID 251–52). The study stated that there is an issue of whether exposure to alcohol or the vapors of alcohol in commercial products can cause elevation in EtG or EtS. *Id.* at pg 5 (Pg. ID 252). This report does not specifically suggest that PEth levels can be elevated due to exposure to alcohol based products. The statements in the report about PEth suggest that false positives are not likely. Further, Plaintiff does not bring any evidence to show that exposure to denatured alcohol over the alleged time period would result in a positive PEth test. Plaintiff also does not provide the actual test results of the six tests he allegedly took after the PEth test as evidence. The only evidence that Plaintiff took these six tests is the allegation in his complaint, which is repeated in his Response to Defendant's Motion. *See* Dkt. No. 8, pg. 11, 18–24 (Pg. ID 221, 228–234). Therefore, this Court holds that Plaintiff has not brought

---

[2] Sensitivity refers to "the ability of the test to correctly identify those individuals *with* the condition of interest when used on an affected population." Dkt. No. 8-3, pg. 2 (Pg. ID 249). Therefore, a test with a high sensitivity is more able to correctly identify individuals under the influence of alcohol.

sufficient evidence to support a plausible claim that his exposure to denatured alcohol produced a positive PEth test. Thus, Defendant validly required Plaintiff to retire and did not breach its contract.

Plaintiff also asserts that Defendant breached its contract by testing him for alcohol after the sixty-month period from his original return to duty in April 2003, in violation of Contract B. Dkt. No. 1, pg. 8 (Pg. ID 8). Contract B states, "you voluntarily agree to submit to additional alcohol/drug tests . . . [that] may continue for up to 60 months following your return to duty." *Id.* at pg. 18 (Pg. ID 18). Plaintiff signed contract B on July 28, 2010. Dkt. No. 1, pg. 18 (Pg. ID 18). Therefore, Defendant could validly test Plaintiff for alcohol for up to 60 months after he began work again sometime shortly after July 28, 2010. Defendant tested Plaintiff on or about October 10, 2014. *Id.* at pg. 5 (Pg. ID 5). This is within the sixty-month timeframe denoted in Contract B. Therefore, this Court finds that Defendant did not breach its contract by testing Plaintiff for alcohol outside of the allowed timeframe.

In conclusion, Count I of Plaintiff's complaint does not state a valid theory of recovery. This Court holds that Plaintiff's Count I is preempted by the RLA and fails to state a claim upon which relief can be granted. Therefore, this Court will dismiss Count I of Plaintiff's complaint.

### B. Michigan Persons with Disabilities Civil Rights Act

Count II of Plaintiff's complaint alleges a violation of the Michigan Persons with Disabilities Civil Rights Act. Dkt. No. 1 at pg. 10 (Pg. ID 10). Plaintiff asserts that no interpretation of the LCA is required to resolve Plaintiff's claim. Dkt. No. 8, pg. 27 (Pg. ID 237). Therefore, the RLA has no preemptive effect. *Id.* Plaintiff also asserts that alcoholism is a disability, and constructive discharge has been found to apply to claims under the Michigan PWDCRA. *Id.* at pg. 28 (Pg. ID 238). Therefore, his claim under the Michigan PWDCRA states a claim upon which relief can be granted. *Id.*

#### 1) Preemption

Defendant asserts that Plaintiff's PWDCRA claim is preempted by the RLA. Dkt. No. 5, pg. 28 (Pg. ID 56). Plaintiff asserts that the claim is not preempted because an interpretation of the LCA is not required. Dkt. No. 8, pg. 27 (Pg. ID 237).

As held above, LMRA preemption law applies to the RLA. Preemption law under the LMRA holds that "state law rules that substantially implicate the meaning of the collective bargaining agreement terms" are preempted. *See DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994). Therefore, courts may

only evaluate state law claims if the claims "do not require construing collective bargaining agreements." *Id.* Here, Plaintiff asserts that Defendant violated the Michigan PWDCRA "by inaccurately determining substance abuse based on the use of the PEth testing methodology that fails to distinguish between the ingestion of alcoholic beverage and a mere topical/inhalation exposure to ethanol . . . ." Dkt. No. 1 at pg. 11 (Pg. ID 11). Plaintiff also generally asserts that Defendant discriminated against him because of his alcoholism. *See id.* The resolution of these allegations does not require the Court to interpret the terms of the LCA. The resolution of these claims would require the Court to analyze the Michigan PWDCRA to determine if it prohibits the use of PEth tests and if it treats alcoholism as a disability.

Defendant states that Plaintiff alleges Delta violated the PWDCRA by requiring him to undergo a PEth test. Dkt. No. 5, pg. 28 (Pg. ID 56). However, what Plaintiff actually alleged was that Defendant violated the PWDCRA by using the PEth test to determine that he was under the influence of alcohol. Plaintiff did not allege Defendant violated the PWDCRA by requiring him to take the test. Therefore, the Court holds that Defendant's preemption argument is invalid.

In conclusion, this Court holds that the RLA does not preempt Count II of Plaintiff's complaint.

### 2) Failure to State a Claim

Defendant argues that Plaintiff's PWDCRA claim fails to state a claim upon which relief can be granted. Dkt. No. 5, pg. 30 (Pg. ID 58). Plaintiff asserts that alcoholism is a disability that gets protection under the Michigan PWDCRA. Dkt. No. 8, pg. 28 (Pg. ID 238). Under the PWDCRA, a disability is defined as "[a] determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic . . . substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position . . . ." M.C.L. § 37.1103(d)(i)(A). A disability is not "[a] determinable physical or mental characteristic caused by the use of an alcoholic liquor . . . if that physical or mental characteristic prevents that individual from performing the duties of his or her job." *Id.* at § (d)(i)(D)(f)(ii). Here, it is clear that alcohol use prevents an airline pilot from performing his job. One cannot be under the influence of alcohol and be trusted to operate an airplane. Plaintiff does not bring facts to show that being under the influence of alcohol does not prevent an individual from performing the duties of his job.

Plaintiff also asserts that he has a valid claim under the Michigan PWDCRA because Defendants perceived him to have a disability that he does not have. Dkt.

No. 8, pg. 28 (Pg. ID 238). To state a claim for perceived disability under the PWDCRA, a plaintiff must prove:

> (1) the plaintiff was regarded as having a determinable physical or mental characteristic; (2) the perceived characteristic was regarded as substantially limiting one or more of the plaintiff's major life activities; and (3) the perceived characteristic was regarded as being unrelated either to the plaintiff's ability to perform the duties of a particular job or position or to the plaintiff's qualifications for employment or promotion.

*Michalski v. Reuven Bar Levav*, 65 N.W.2d 754, 760 (Mich. 2001). In this case, Plaintiff cannot show that the perceived characteristic of him being under the influence of alcohol was unrelated to the ability to perform his job. To the contrary, not being under the influence of alcohol is an essential function to be able to perform a job as an airline pilot. Therefore, Plaintiff does not have a viable claim under a perceived disability argument.

Plaintiff additionally alleges that Defendant violated the PWDCRA by "inaccurately determining substance abuse based on the use of the PEth testing methodology . . . ." Dkt. No. 1, pg. 11 (Pg. ID 11). However, Plaintiff presents no evidence that using the PEth test violates the PWDCRA. The PWDCRA does not prohibit using a PEth test.

Plaintiff lastly asserts that Defendant discriminated against him based on his past history of alcoholism. Dkt. No. 1, pg. 11 (Pg. ID 11). However, Plaintiff provides no evidence of this assertion. Defendant continued to employ Plaintiff after

it discovered that he suffered from alcoholism. Defendant required Plaintiff to resign after he failed an alcohol test, and not because of his past history as an alcoholic.

For the reasons discussed above, Count II of Plaintiff's complaint does not state a valid theory of recovery. In conclusion, this Court holds that Plaintiff's Count II is not preempted by the RLA but fails to state a claim upon which relief can be granted. Therefore, this Court will dismiss Count II of Plaintiff's complaint.

### V. CONCLUSION

For the reasons discussed herein, the Court will grant Defendant's Motion.

SO ORDERED.

Dated: May 10, 2018

                                                           s/Gershwin A. Drain
                                                           HON. GERSHWIN A. DRAIN
                                                           United States District Court Judge